Jack Silver, Esq. SB #160575
LAW OFFICE OF JACK SILVER
708 Gravenstein Hwy No. # 407
Sebastopol, CA 95472
Tel. (707) 528-8175
Jsilverenvironmental@gmail.com

Jerry Bernhaut, Esq. SB #206264
LAW OFFICE OF JERRY BERNHAUT
23 Woodgreen St.
Santa Rosa, CA 95409
Tel. (707) 595-1852
j3bernhaut@gmail.com

Attorneys for Plaintiff
CALIFORNIA RIVER WATCH

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA RIVER WATCH, an IRC § 501(c)(3), non-profit, public benefit corporation,<br><br>Plaintiff,<br><br>v.<br><br>BO DEAN CO., INC.,<br><br>Defendant. | CASE NO: 3:21-cv-03412<br><br>**COMPLAINT FOR INJUNCTIVE RELIEF, CIVIL PENALTIES, AND DECLARATORY RELIEF**<br>**(Environmental - CWA – 33 U.S.C. § 1251 *et seq*.)** |

Plaintiff CALIFORNIA RIVER WATCH ("RIVER WATCH") hereby brings this civil action pursuant to the Federal Water Pollution Control Act, also known as the Clean Water Act (hereafter, "CWA"), 33 U.S.C. § 1251 *et seq*.

**I.      INTRODUCTION**

1.     This action is a citizen suit for injunctive relief, civil penalties, and declaratory relief brought against defendant BO DEAN CO., INC., (hereafter, "BO DEAN") under the citizen suit enforcement provisions of the CWA, 33 U.S.C. § 1365, for routinely violating an effluent standard or limitation

under the Act or an order issued by the State with respect to such standard or limitation without complying with any other sections of the Act including CWA § 402, 33 U.S.C. § 1342.

2. On or about August 17, 2020, RIVER WATCH provided notice of BO DEAN's violations of the CWA to the Administrator of the United States Environmental Protection Agency (hereafter, "EPA"), EPA's Regional Administrator for Region Nine, the Executive Director of the State Water Resources Control Board (hereafter, "SWRCB"), and BO DEAN as owner of Mark West Quarry located at 4611 Porter Creek Road, Santa Rosa, California, as required by the CWA, 33 U.S.C. § 1365(b)(1)(A). A true and correct copy of RIVER WATCH's 60-Day Notice of Violations (hereafter, "Mark West Quarry Notice") is attached as **EXHIBIT A** and fully incorporated by reference. BO DEAN, the SWRCB, the Regional and National Administrators of the EPA all received this Notice.

3. On or about November 11, 2020, RIVER WATCH provided notice of BO DEAN's violations of the CWA to the Administrator of the EPA, EPA's Regional Administrator for Region Nine, the Executive Director of the SWRCB, and BO DEAN as owner of Blue Rock Quarry, located at 7888 Highway 116, Forestville, California, as required by the CWA, 33 U.S.C. § 1365(b)(1)(A). A true and correct copy of RIVER WATCH's 60-Day Notice of Violations (hereafter, "Blue Rock Quarry Notice") is attached as **EXHIBIT B** and fully incorporated by reference. BO DEAN, the SWRCB, the Regional and National Administrators of EPA all received this Notice.

4. On or about March 1, 2021, RIVER WATCH provided notice of BO DEAN's violations of the CWA to the Administrator of the EPA, EPA's Regional Administrator for Region Nine, the Executive Director of the SWRCB, and BO DEAN as owner of Santa Rosa Hot Plant, located at 1060 Maxwell Drive, Santa Rosa, California, as required by the CWA, 33 U.S.C. § 1365(b)(1)(A). A true and correct copy of RIVER WATCH's 60-Day Notice of Violations (hereafter, "Hot Plant Notice") is attached as **EXHIBIT C** and fully incorporated by reference. BO DEAN, the SWRCB, the Regional and National Administrators of EPA all received this Notice.

5. More than sixty (60) days have passed since RIVER WATCH's Mark West Quarry Notice, Blue Rock Quarry Notice, and Hot Plant Notice were served on BO DEAN, the SWRCB, and the Regional and National EPA Administrators. RIVER WATCH is informed and believes, and thereupon alleges, that neither the EPA nor the State of California has commenced or is diligently prosecuting a

court action to redress the violations alleged in this Complaint. This action's claim for civil penalties is not barred by any prior administrative penalty under CWA § 309(g), 33 U.S.C. § 1319(g).

## II.   JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), and 33 U.S.C. § 1365(a) (CWA citizen suit jurisdiction). The relief requested is authorized pursuant to 28 U.S.C. §§ 2201-2202 (declaratory relief), 33 U.S.C. §§ 1319(b), 1365(a) (injunctive relief), and 33 U.S.C. §§ 1319(d), 1365(a) (civil penalties).

7. Venue is proper because BO DEAN and its discharging facilities are located, and the events or omissions giving rise to RIVER WATCH's claims, occurred in this District. 28 U.S.C. §1319(b)(1), (2). Venue is also proper because BO DEAN's CWA violations as alleged in this Complaint have occurred, and are occurring within the District. 33 U.S.C. § 1365(c)(1).

## III.   PARTIES TO THE ACTION.

8. RIVER WATCH is now, and at all times relative to this Complaint was, an Internal Revenue Code § 501(c)(3) non-profit, public benefit corporation organized under the laws of the State of California, with headquarters located in Sebastopol, California and mailing address of 290 S. Main Street, #817, Sebastopol, California 95472. The specific purpose of RIVER WATCH is to protect, enhance and help restore surface and groundwaters of California including coastal waters, rivers, creeks, streams, wetlands, vernal pools, aquifers and associated environs, biota, flora and fauna, as well as to educate the public concerning environmental issues associated with these environs. Members of RIVER WATCH have interests in the waters and watersheds which are or may be adversely affected by BO DEAN's discharges and violations of the CWA as alleged herein. Said members may use the effected waters and watershed areas for recreation, sports, fishing, hiking, photography, nature walks and/or the like. Furthermore, the relief sought will redress the injury in fact, likelihood of future injury, and interference with the interests of said members. BO DEAN's ongoing violations of the CWA will cause irreparable harm to members of RIVER WATCH for which they have no plain, speedy, or adequate remedy. The relief requested will redress the ongoing injury in fact to RIVER WATCH's members.

9. RIVER WATCH is informed and believes, and on such information and belief alleges, that Defendant BO DEAN CO., INC., is now, and at all times relevant to this Complaint was, a corporation registered with the State of California, with a principal executive office located at 1060 North Dutton Avenue, Santa Rosa, Sonoma County, California; and, the owner, operator and managing agent of Mark West Quarry, Blue Rock Quarry, and Santa Rosa Hot Plant. Mark West Quarry, Blue Rock Quarry, and Santa Rosa Hot Plant are collectively referred to hereafter in this Complaint as the "Facilities."

IV.   **FACTUAL ALLEGATIONS WHICH GIVE RISE TO CLAIMS**

10. RIVER WATCH incorporates by reference all the foregoing including EXHIBIT A, EXHIBIT B and EXHIBIT C as though the same were separately set forth herein. RIVER WATCH takes this action to ensure compliance with the CWA, which regulates the discharge of pollutants into navigable waters. The statute is structured in such a way that all discharges of pollutants are prohibited with the exception of enumerated statutory provisions. One such exception authorizes a discharger, who has been issued a permit pursuant to 33 U.S.C. § 1342, to discharge designated pollutants at designated levels subject to specific conditions. The effluent discharge standards or limitations specified in a National Pollutant Discharge Elimination System ("NPDES") permit define the scope of the authorized exception to the 33 U.S.C. § 1311(a) prohibition, such that violation of a permit limit places a discharger in violation of the CWA.

11. The CWA provides that authority to administer the NPDES permitting system in any given state or region can be delegated by the EPA to a state or to a regional regulatory agency, provided that the applicable state or regional regulatory scheme under which the local agency operates satisfies certain criteria, 33 U.S.C. § 1342(b). In California, the EPA has granted authorization to a state regulatory apparatus comprised of the SWRCB and several subsidiary regional water quality control boards to issue NPDES permits. The entity responsible for issuing NPDES permits and otherwise regulating BO DEAN's operations in the region at issue in this Complaint is the Regional Water Quality Control Board, North Coast Region (hereafter, "RWQCB").

12. While delegating authority to administer the NPDES permitting system, the CWA provides that enforcement of permitting requirements under the statute relating to effluent standards or

limitations imposed by the Regional Boards can be ensured by private parties acting under the citizen suit provision of the statute, 33 U.S.C. § 1365. RIVER WATCH is exercising such citizen enforcement to enforce compliance by BO DEAN with the CWA.

13. In Exhibits A-C and herein RIVER WATCH has identified violations of the General Permit.

## V. BO DEAN's VIOLATIONS OF THE CWA - MARK WEST QUARRY

14. RIVER WATCH alleges that BO DEAN has violated the Act as described in the Mark West Quarry Notice (EXHIBIT A). RIVER WATCH alleges these violations are continuing or have a likelihood of occurring in the future.

15. BO DEAN filed a Notice of Intent ("NOI") agreeing to comply with the terms and conditions of the General Permit. The SWRCB approved the NOI for Mark West Quarry on March 4, 1993, and Mark West Quarry was assigned Waste Discharger Identification ("WDID") number 1 49I009813.

16. RIVER WATCH, following its investigation, review of documents on the SWRCB's Stormwater Multiple Application and Report Tracking System (hereafter "SMARTS") data base, and an extensive site visit, alleges BO DEAN has failed to conduct its industrial operations at Mark West Quarry in compliance with the requirements of the General Permit.

17. RIVER WATCH alleges BO DEAN fails to sample from representative sampling locations at Mark West Quarry as required under the General Permit.

18. RIVER WATCH alleges BO DEAN fails to provide sampling results for discharges of pollutants resulting from transportation related activities taking place at Mark West Quarry. The General Permit requires a discharger to ensure that industrial storm water discharges do not: (a) cause or contribute to an exceedance of any applicable water quality standards in the Russian River including its tributaries (General Permit Section I.E.37, VI.A.); (b) adversely affect human health or the environment (General Permit Section VI.B.); and, (c) do not contain pollutants in quantities that threaten to cause pollution or a public nuisance (General Permit Section III.C., VI.C.). RIVER WATCH alleges that BO DEAN provides no evidence of complete compliance with these requirements for the transportation related areas within Mark West Quarry. Raw and processed materials are transported by a variety of conveyor systems, heavy equipment, and smaller loaders as described in the Mark West Quarry Stormwater Pollution Prevention Plan ("Mark West SWPPP) at

page 7. BO DEAN identifies these transportation activities taking place at Mark West Quarry but fails to sample and test for copper or zinc which are known pollutants from tires, brake pads, fuels, and lubricants, and are aquatic toxins.

19. RIVER WATCH alleges BO DEAN fails to monitor discharges from wastewater ponds, and implement effective erosion control at Mark West Quarry. Industrial Processes taking place at Mark West Quarry include the use and operation of wastewater ponds. Several retention ponds and several stormwater settling structures, primarily in the Material Processing Area, allow sedimentation prior to discharge as identified in the Mark West SWPPP at page 5. Public records reviewed by RIVER WATCH demonstrate capacity concerns regarding the sedimentation pond connected to Discharge Point SP-1, at the southeast corner of the site, which discharges to Porter Creek. RIVER WATCH alleges storm water overflows from the sedimentation pond prior to adequate time for sedimentation, and further that it is likely similar overflows occur from other ponds on the site.

20. RIVER WATCH alleges the Mark West SWPPP is inadequate. The Best Management Practices ("BMPs") for Mark West Quarry as set out in Mark West SWPPP Sections 6.0 ("Minimum BMPs") and 7.0 ("Advanced BMPs") are not detailed sufficiently to determine whether the ponds are lined or unlined, and whether they are sufficient to hold all regulated storm water prior to evaporation or reuse. The "Erosion and Sediment Controls" identified in Section 6.0 of the Mark West SWPPP are not detailed sufficiently to determine whether the natural and manmade slopes, process areas, open areas and roads that consist of dirt and gravel roadways within the site are constructed and maintained to properly control storm water discharges from the site. Based upon the data reviewed and observations made during the site visit, BO DEAN has not maintained Minimum BMPs sufficient to eliminate all violations of the General Permit.

21. RIVER WATCH alleges that BO DEAN has failed to prepare and implement an adequate SWPPP for Mark West Quarry. The General Permit requires the preparation, implementation, review and update of an adequate SWPPP which must comply with the standards of Best Available Technology ("BAT") and Best Conventional Pollutant Control Technology ("BCT"). The General Permit requires dischargers to implement BMPs when necessary, to support attainment of water quality standards and not to exceed Water Quality Objectives (hereafter, "WQOs") that are in the

Water Quality Control Plan for the North Coast Region Basin ("Basin Plan") or any other state or federal WQOs applicable to Mark West Quarry. BO DEAN's discharges violate WQOs. Discharges from Mark West Quarry adversely affect Porter Creek, a tributary to the Russian River – both waters of the United States.

22. TSS are dissolved solids plus suspended and settleable solids in water. Dissolved solids consist of calcium, chlorides, nitrate, phosphorus, iron, sulfur, and other ions particles. Suspended solids include silt and clay particles, plankton, algae, fine organic debris, and other particulate matter. High concentrations of TSS adversely affect the water balance in the cells of aquatic organisms. Higher concentrations of TSS can serve as carriers of toxics, which readily cling to suspended particles. A high concentration of TSS will make drinking water unpalatable and may have an adverse effect on health. Total solids also affect water clarity. Higher solids decrease the passage of light through water, thereby slowing photosynthesis by aquatic plants. Water will heat up more rapidly and hold more heat; this, in turn, might adversely affect aquatic life that has adapted to a lower temperature regime.

23. RIVER WATCH, following review of documents on file with the SWRCB's SMARTs reporting database, alleges BO DEAN has not fully developed and/or adequately implemented a SWPPP for operations as evidenced by the fact that BO DEAN has failed to reduce pollutants in storm water at Mark West Quarry to below benchmarks identified in the General Permit and WQOs. A review of BO DEAN's Self-Monitoring Reports demonstrates discharges are occurring from the site to Porter Creek exceeding WQOs, EPA benchmarks and Numeric Action Limits. TSS is being discharged from the site to Porter Creek indicating a failure to implement adequate BMPs. These exceedances are documented in EXHBIT A and fully incorporated herein.

24. BO DEAN must eliminate all potential pollutants that might be discharged from the Mark West Quarry site. In order to do that, BO DEAN must first conduct a comprehensive potential pollutant analysis, including analysis of transportation related pollutants at Mark West Quarry.

## VI. BO DEAN's VIOLATIONS OF THE CWA - BLUE ROCK QUARRY

25. RIVER WATCH alleges BO DEAN has violated the Act as described in the Blue Rock Quarry Notice (EXHIBIT B). RIVER WATCH alleges these violations are continuing or have a likelihood of occurring in the future.

26. BO DEAN filed a Notice of Intent ("NOI") agreeing to comply with the terms and conditions of the General Permit. The SWRCB approved the NOI for Blue Rock Quarry on November 12, 1998, and Blue Rock Quarry was assigned Waste Discharger Identification ("WDID") number 1 49I014736.

27. RIVER WATCH, following its investigation, review of documents on the SWRCB's SMARTS data base, and an extensive site visit to Blue Rock Quarry, alleges BO DEAN has failed to conduct its industrial operations at Blue Rock Quarry in compliance with the requirements of the General Permit.

28. RIVER WATCH alleges BO DEAN has failed to prepare and implement an adequate SWPPP for Blue Rock Quarry. Discharges of storm water from Blue Rock Quarry contain pollutants which adversely affect Green Valley Creek, a tributary to the Russian River. RIVER WATCH, following review of documents on file with the SMARTS reporting database, alleges BO DEAN has not fully developed and/or adequately implemented a SWPPP for operations at Blue Rock Quarry as evidenced by the fact that BO DEAN has failed to reduce pollutants in storm water to below WQOs or limits set forth in the General Permit. A review of BO DEAN's Self-Monitoring Reports demonstrates discharges are occurring from the site to an unnamed tributary to Green Valley Creek exceeding WQOs, EPA benchmarks, and Numeric Action Limits. The Annual Average for TSS concentration in stormwater discharges from the site, as set forth in BO DEAN's December 26, 2019 Level 2 Exceedance Response Action Plan measured as TSS for the reporting period 2019-2020 was 144 mg/L. The General Permit Numeric Action Limit (NAL) is 100 mg/L. The exceedance of the NAL indicates a failure by BO DEAN to implement adequate BMPs for Blue Rock Quarry.

29. Industrial Processes taking place at Blue Rock Quarry include the use and operation of wastewater ponds. RIVER WATCH alleges BO DEAN is failing to monitor discharges from wastewater ponds located within Blue Rock Quarry and failing to implement effective erosion control. Settling ponds and structures are by employed by BO DEAN as BMPs in drainage areas DA-1 and DA-2 as described in BO DEAN's Blue Rock Quarry SWPPP dated October 11, 2018 ("Blue Rock SWPPP") at Table 1. RIVER WATCH alleges that storm water overflows from the ponds prior to adequate time for sedimentation. RIVER WATCH alleges the BMPs for Blue Rock Quarry as set out in Blue Rock SWPPP Sections 6.0 ("Minimum BMPs") and 7.0 ("Advanced BMPs") are not detailed

sufficiently to determine whether the ponds are lined or unlined, and whether they are sufficient to hold all regulated storm water prior to evaporation or reuse. The "Erosion and Sediment Controls" identified in Section 6.0 of the Blue Rock SWPPP are not detailed sufficiently to determine whether the natural and manmade slopes, process areas, open areas, dirt and gravel roadways within the site are constructed and maintained to properly control storm water discharges from the Site. The Blue Rock Quarry site did not maintain minimum BMPs for the time period identified in the Blue Rock Quarry Notice sufficient to eliminate violations of the General Permit.

30.     RIVER WATCH alleges BO DEAN is failing to properly sample and monitor storm water discharges from Blue Rock Quarry. Industrial storm water discharges and authorized non-storm water discharges ("NSWDs") that contain pollutants that cause or threaten to cause pollution, contamination, or nuisance as defined in section 13050 of the Water Code are prohibited. "Waters of the State" means any surface water or groundwater, including saline waters, within the boundaries of the state. Absent any evidence that the settling ponds located in Drainage Areas 1 and 2 of Blue Rock Quarry are lined, RIVER WATCH alleges polluted storm water percolates into groundwater exceeding WQOs and in violation of the General Permit. The site is bounded to the north by an unnamed creek which is a tributary to Green Valley Creek, a tributary of the Russian River. Groundwater at the site is hydrologically connected to the unnamed creek immediately bordering the site such that the pollutants are being discharged from the site to the unnamed creek via hydrologically connected groundwater. The General Permit Section III.D. provides that, "Discharges that violate any discharge prohibitions contained in applicable Regional Water Quality Control Plans (Basin Plans), or statewide water quality control plans and policies are prohibited."  The Basin Plan states that, "Waters designated for use as domestic or municipal supply (MUN) shall not contain concentrations of chemical constituents in excess of the limits specified in California Code of Regulations, Title 22, Chapter 15, Division 4, Article 4, Section 64435 (Tables 2 and 3), and Section 64444.5 (Table 5), and listed in Table 3-2 of this Plan." All groundwater in the North Coast Region is designated as a potential source of municipal water supply. Widely recognized metals of concern in gravel and sand include iron, aluminum cobalt, chromium, copper, nickel, lead, zinc and arsenic. All of these constituents have concentration limits as designated in Table 3-2 of the Basin Plan. RIVER WATCH alleges BO DEAN is required to

periodically test groundwater at the site of Blue Rock Quarry for these recognized constituents of concern associated with rock quarry operations.

31.     RIVER WATCH alleges BO DEAN fails to provide sampling results for discharges of pollutants resulting from transportation related activities taking place at Blue Rock Quarry. RIVER WATCH alleges Defendant provides no evidence of complete compliance with these requirements for transportation related areas taking place at Blue Rock Quarry.  The General Permit requires BO DEAN to ensure that industrial storm water discharges do not: (a) cause or contribute to an exceedance of any applicable water quality standards in the Russian River including its tributaries (General Permit Section I.E. 37, VI.A.); (b) adversely affect human health or the environment (General Permit Section VI.B.); and, (c) do not contain pollutants in quantities that threaten to cause pollution or a public nuisance (General Permit Section III.C.).   RIVER WATCH alleges BO DEAN does not comply with these requirements for transportation related activities taking place at Blue Rock Quarry.  Blue Rock Facility employs a variety of conveyor systems for handling raw and processed materials. Materials are also moved by heavy equipment (particularly in the Active Mining Area and by smaller loaders in the Materials Processing Area as described in Blue Rock SWPPP at Table D, p.6.  Numerous references are found in Blue Rock SWPPP for truck activity, loader buckets, and truck beds – all identified as potential pollution sources in Blue Rock SWPPP at Table 4.  Although BO DEAN identifies these transportation activities taking place, it fails to test storm water discharges for copper or zinc which are known pollutants from tires, brake pads, fuels, and lubricants.

32.     RIVER WATCH alleges BO DEAN, in order to comply with the General Permit, must conduct a comprehensive potential pollutant analysis, including an analysis of transportation related activities at Blue Rock Quarry.  In addition to the pollution controls imposed under CWA permitting, the RWQCB has established water quality standards applicable to facilities such as Blue Rock Quarry. The RWQCB's Basin Plan includes both numeric and narrative standards.

**VII.    BO DEAN's VIOLATIONS OF THE CWA – SANTA ROSA HOT PLANT**

33.     RIVER WATCH alleges BO DEAN has violated the Act as described in the Hot Plant Notice (EXHIBIT C).   RIVER WATCH alleges these violations are continuing or have a likelihood of occurring in the future.

---

34. BO DEAN filed a Notice of Intent ("NOI") agreeing to comply with the terms and conditions of the General Permit. The SWRCB approved the NOI for Santa Rosa Hot Plant on June 19, 2015, and Santa Rosa Hot Plant was assigned Waste Discharger Identification ("WDID") number 1 49I0147446.

35. Full compliance with the mandates of the General Permit is not a mere statutory and regulatory exercise. The lands in and surrounding the Russian River Watershed produce a harvest of unparalleled bounty drawing acclaim worldwide. Failing to care for this critical environment is a violation not only of law, but an abrogation of the trust demanded of Sonoma County landowners.

36. Having agreed to its terms, BO DEAN has a continuing burden to demonstrate compliance with each applicable provision of the General Permit. RIVER WATCH alleges the following actions and inactions as violations of the General Permit:

37. Santa Rosa Hot Plant is a large site consisting of several parcels totaling an area of 6.643 acres. RIVER WATCH alleges BO DEAN has failed to properly sample and monitor storm water discharges and fails to sample from representative sampling locations. Under the General Permit, BO DEAN is required to collect and analyze storm water samples from two Qualifying Storm Events ("QSEs") within the first half of each reporting year (July 1 to December 31), and two QSEs within the second half of each reporting year (January 1 to June 30) (General Permit XI.B.2). The General Permit requires that representative samples shall be collected from each drainage area at all discharge locations. The samples must be representative of storm water associated with industrial activities and any commingling authorized NSWDs (General Permit XI.B.4.a). BO DEAN's Hot Plant SWPPP inadequately identifies the drainage areas and BO DEAN fails to properly sample discharges from the Santa Rosa Hot Plant site.

38. At the Santa Rosa Hot Plant site, raw and processed materials are stored and transported within Drainage Area-1 ("DA-1"). Vehicle traffic is identified as a Potential Contributing Industrial Pollutant Source in BO DEAN's Exceedance Response Action Level 2 Technical Report ("ERA") at page 4. The ERA identifies BO DEAN's transportation related activities taking place at Santa Rosa Hot Plant. However, BO DEAN fails to sample for copper or zinc which are known pollutants from tires, brake pads, fuels, and lubricants. BO DEAN should also be testing for 6PPD-quinone, a tire preservative

which is toxic to salmonids. The creek into which pollutants are discharged from Santa Rosa Hot Plant is a salmonid spawning habitat.

39. Asphalt is gravel mixed with petroleum. Binder oil is identified as a potential pollutant source in the Hot Plant SWPPP at Table 4. Pollutants associated with asphalt include total petroleum hydrocarbon (TPH) and BTEX (benzene, toluene, ethylbenzene, and xylene). Santa Rosa Hot Plant's high levels of TSS contain particulate matter conveying petroleum hydrocarbons and other pollutants mobilized by storm water. To show compliance with the General Permit's prohibition against exceedance of any applicable water quality standards (General Permit Section I.E.37, VI.A.), adversely affecting human health or the environment (General Permit Section VI.B.), or causing pollution or a public nuisance (General Permit Section III.C., VI.C), BO DEAN is required to sample for TPH and BTEX and other petroleum hydrocarbons to determine whether they are being discharged at the Santa Rosa Hot Plant site in concentrations that violate the General Permit or other WQOs.

40. Structural control measures at Santa Rosa Hot Plant include a settling pond and weir in the southwest portion of the site described in the Hot Plant SWPPP at Table C, page 4. Directly exposed materials (primarily aggregate stockpiles and bunkers) are present throughout the site as described in the Hot Plant SWPPP at Table D, page 5. The Site Map for Santa Rosa Hot Plant, shown in the Hot Plant SWPPP at Figure 2, shows aggregate stockpiles and the aggregate recycling plant in physical proximity to the settling pond so that pollutants mobilized by contact with storm water are likely to be discharged to the pond. The Hot Plant SWPPP is inadequate in that there is no information in Section 6 (Minimum BMPs) or Section 7 (Advanced BMPs) to determine whether the pond is lined or unlined, and whether the pond's capacity is sufficient to hold all regulated storm water prior to evaporation or reuse. RIVER WATCH alleges that storm water overflows from the pond prior to adequate time for sedimentation, ultimately discharging pollutants from Santa Rosa Hot Plant site to receiving waters.

41. Discharges from Santa Rosa Hot Plant containing pollutants, which adversely affect the Russian River, are transferred via underground piping which conducts storm water to the west central portion of the site where it drains to the City of Santa Rosa municipal storm system ("MS4") on Maxwell Drive, as described in Hot Plant SWPPP at Table C, page 4). RIVER WATCH, following review of documents on file with the SWRCB's SMARTS reporting database and observations of the

Santa Rosa Hot Plant site, alleges BO DEAN has not fully developed and/or adequately implemented a SWPPP for operations at Santa Rosa Hot Plant as evidenced by the fact that BO DEAN has failed to reduce pollutants in storm water to below the requirements of the General Permit and WQOs.  A review of BO DEAN's Self-Monitoring Reports demonstrates discharges are occurring from the site to the Russian River exceeding WQOs, EPA benchmarks and Numeric Action Levels as described in the Hot Plant Notice (EXHIBIT C) and fully incorporated herein.

42.    BO DEAN has been and will continue to be in violation of the Act every day it discharges storm water containing pollutants as identified in the Hot Plant Notice (EXHIBIT C) without adequately implementing the Hot Plant SWPPP and the BMPs required to be incorporated into that SWPPP.

43.    RIVER WATCH, following review of documents on file with the SWRCB's SMARTS reporting database, contends BO DEAN has failed and continues to fail to eliminate the ongoing discharge of polluted storm water in exceedance of WWOs, EPA Benchmarks, and Numeric Action Levels, and therefore is in violation of the terms of the General Permit.  BO DEAN must eliminate all potential pollutants that might be discharged from the Santa Rosa Hot Plant site.  In order to do so, BO DEAN must first conduct a comprehensive potential pollutant analysis, including an analysis of transportation related pollutants at the Santa Rosa Hot Plant.

**VIII.    STATUTORY AND REGULATORY BACKGROUND**

44.    CWA § 301(a), 33 U.S.C. § 1311(a) prohibits discharges of pollutants or activities not authorized by, or in violation of, an effluent standard or limitation or an order issued by the EPA or a State with respect to such a standard or limitation including an NPDES permit issued pursuant to 33 U.S.C. § 1342. Additional sets of regulations are set forth in the Basin Plan, California Toxics Rule, the Code of Federal Regulations, and other regulations promulgated by the EPA and the SWRCB. TSS, copper, and zinc are specifically identified in the CWA as pollutants.

45.    The affected waterways detailed in this Complaint, EXHIBIT A, EXHIBIT B, and EXHIBIT C, are navigable waters of the United States within the meaning of 33 U.S.C. § 1362(7).

46.    The Administrator of the EPA has authorized Regional Water Quality Control Boards to issue NPDES permits, subject to specified conditions and requirements, pursuant to 33 U.S.C. § 1342.

47. The RWQCB's Basin Plan identifies multiple beneficial uses for the Russian River watershed in the vicinity of the Facilities including navigation, water contact recreation, non-contact water recreation, cold fresh water habitat, wildlife habitat, preservation of rare and endangered species, and fish migration and spawning. The illegal discharges of pollutants by BO DEAN as alleged in this Complaint cause prohibited pollution by unreasonably affecting these beneficial uses.

48. All of the discharges as identified and described herein (including Exhibits A-C) are violations of 33 U.S.C. § 1311(a), in that they are discharges of stormwater, from a facility associated with industrial activity, to a water of the United States without complying with the terms of the General Permit or any other sections of the CWA. RIVER WATCH alleges these violations are continuing in nature or have a likelihood of occurring in the future.

49. CWA §§ 505(a)(1) and 505(f) provide for citizen enforcement actions against any "person," including individuals, corporations, or partnerships, for violations of NPDES permit requirements and for unpermitted discharges of pollutants. 33 U.S.C. §§ 1365(a)(1) and (f), §1362(5). An action for injunctive relief under the CWA is authorized by 33 U.S.C. §1365(a). Violators of the Act are also subject to an assessment of civil penalties of up to $56,460.00 per day/per violation pursuant to Sections 309(d) and 505 of the Act, 33 U.S.C. §§ 1319(d), 1365. *See also* 40 C.F.R. §§ 19.1-19.4.

50. Pursuant to CWA § 505(a)(1)(A), 33 U.S.C. 1365(a)(1)(A), BO DEAN's industrial stormwater discharges as detailed herein, in the Mark West Quarry Notice, Blue Rock Quarry Notice, and Santa Rosa Hot Plant Notice (EXHIBITS A-C) made part of this Complaint are violations of 33 U.S.C. § 1311(a).

51. RIVER WATCH alleges that from the dates identified in the various Notices (EXHIBITS A-C) BO DEAN violated the CWA by discharging pollutants from the Facilities to waters of the United States in violation of the General Permit. Furthermore, RIVER WATCH alleges these violations are continuing.

52. BO DEAN will continue to be in violation of the General Permit and therefore the CWA each day it non-storm water pollutants and contaminated storm water from the Facilities in violation of the General Permit.

---
Complaint for Injunctive Relief, Civil Penalties, and
Declaratory Relief                                           14

53. RIVER WATCH believes that at a minimum, implementing the requirements of the General Permit as outlined in EXHIBITS A-C is necessary in order to bring the Facilities into compliance with the CWA and reduce the biological impacts from BO DEANs non-compliance upon public health and the environment.

54. The violations of the CWA and the General Permit as set forth herein and in EXHIBITS A-C affect the health and enjoyment of members of RIVER WATCH who reside and recreate in the affected community. Members of RIVER WATCH may use the affected watershed for recreation, fishing, hiking, photography, nature walks and/or the like. Their health, use, and enjoyment of this natural resource is specifically impaired by BO DEAN's violations of the CWA as alleged in this Complaint.

IX.   **CLAIM FOR RELIEF**

**Violations of the CWA Pursuant to CWA § 402(p) 33 U.S.C. § 1342(p) - Failure to Comply with NPDES Permit No. CAS000001 (the "General Permit")**

55. RIVER WATCH re-alleges and incorporates by reference the allegations of Paragraphs 1 through 54, including EXHIBIT A, EXHIBIT B and EXHIBIT C as though fully set forth herein.

56. RIVER WATCH alleges that in its operation of the Facilities, has failed and is failing to comply with the terms and conditions of the General Permit requiring the preparation, implementation, review and update of an adequate SWPPP as evidenced by a history of exceedances of WQOs, EPA Benchmarks and Numeric Action Limits for pollutants in storm water discharges.

57. RIVER WATCH alleges that in its operation of the Facilities, has failed and is failing to develop and implement an adequate monitoring and reporting program by failing to sample discharges from all drainage areas at the sites, as detailed above. Thus, BO DEAN's sampling procedures are not representative of stormwater associated with activity at the sites, in violation of General Permit section XI.B.4.a.

58. RIVER WATCH alleges that in its operation of the Facilities, BO DEAN has failed and is failing to develop and implement an adequate monitoring and reporting program, as evidenced by the failure to monitor overflows from storm water retention and control

structures including holding tanks, ponds and sediment traps.

59. RIVER WATCH alleges that BO DEAN has failed to monitor for the full range of pollutants associated with activities at the Facilities, by failing to sample stormwater discharges for pollutants associated with transportation and conveyor activities at the Facilities including copper and zinc which are known pollutants from tires, brake pads, fuels, and lubricants.

60. The violations of BO DEAN as set forth in this Complaint are on-going and will continue after the filing of this Complaint. RIVER WATCH alleges herein all violations which may have occurred or will occur prior to trial, but for which data may not have been available or submitted or apparent from the face of the reports or data submitted by BO DEAN to the RWQCB. RIVER WATCH alleges that illegal discharges from the Facilities occur each day that there is or has been sufficient rainfall to cause stormwater runoff to exit the Facilities. Each day BO DEAN illegally discharges is a separate violation of the CWA.

61. RIVER WATCH avers and believes, and on such belief alleges, that without the imposition of appropriate civil penalties and the issuance of appropriate equitable relief, BO DEAN will continue to violate the CWA as well as State and Federal standards with respect to the enumerated discharges alleged herein. RIVER WATCH avers and believes, and on such belief alleges, that the relief requested in this Complaint will address the injury to RIVER WATCH's members, prevent future injury, and protect the interests of RIVER WATCH's members, which interests are or may be adversely affected by BO DEAN's violations of the CWA, as well as other State and Federal standards.

## X.   RELIEF REQUESTED

Wherefore, RIVER WATCH prays that the Court grant the following relief:

62. Declare BO DEAN to have violated and to be in violation of the CWA.

63. Issue an injunction ordering BO DEAN to immediately operate Mark West Quarry, Blue Rock Quarry, and Santa Rosa Hot Plant in compliance with the CWA.

64. Order BO DEAN to pay civil penalties of $56,460.00 per violation/per day for its violations of the CWA.

65. Order BO DEAN to pay the reasonable attorneys' fees and costs of RIVER WATCH (including expert witness fees), as provided by CWA § 505(d), 33 U.S.C. § 1365(d).

66. For such other and further relief as the court deems just and proper.

DATED: May 7, 2021                LAW OFFICE OF JACK SILVER

                                  By:      /s/ Jack Silver
                                           Jack Silver

                                  LAW OFFICE OF JERRY BERNHAUT

                                  By:      /s/ Jerry Bernhaut
                                           Jerry Bernhaut

                                  Attorneys for Plaintiff
                                  CALIFORNIA RIVER WATCH