Jack Silver, Esq. SB #160575
LAW OFFICE OF JACK SILVER
708 Gravenstein Hwy North. # 407
Sebastopol, CA 95472-2808
Tel. (707) 528-8175
JSilverEnvironmental@gmail.com

Jerry Bernhaut Esq. SB #206264
LAW OFFICE OF JERRY BERNHAUT
23 Woodgreen St.
Santa Rosa, CA 95409
Tel. (707) 595-1852
j3bernhaut@gmail.com

Attorneys for Plaintiff
CALIFORNIA RIVER WATCH

Sean K. Hungerford, Esq.
HARRISON TEMBLADOR
HUNGERFORD & JOHNSON
2801 T Street
Sacramento, CA 95816
Tel. (916) 706-2845
shungerford@hthjlaw.com

Attorneys for Defendant
BO DEAN CO., INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA RIVER WATCH, an IRC § 501(c)(3), non-profit, public benefit Corporation,<br><br>Plaintiff,<br><br>v.<br><br>BO DEAN CO., Inc.,<br><br>Defendant. | Case No.  3:21-cv-03412-SI<br><br>[PROPOSED] CONSENT DECREE AND ORDER<br><br>Honorable Susan I. Illston |

The following [Proposed] Consent Decree is entered into by and between Plaintiff CALIFORNIA RIVER WATCH, and Defendant, BO DEAN, CO. INC. The entities entering into this Consent Decree are each an individual "Party" and collectively the "Parties."

## RECITALS

WHEREAS, Plaintiff California River Watch ("River Watch") is an Internal Revenue Code § 501(c)(3) nonprofit, public benefit corporation organized under the laws of the State of California, dedicated to protecting, enhancing, and helping to restore the surface waters and groundwaters of California, including coastal waters, rivers, creeks, streams, wetlands, vernal pools, aquifers and associated environs, biota, flora and fauna, and to educating the public concerning environmental issues associated with these environs;

WHEREAS, Defendant BO DEAN, CO. INC. ("BO DEAN"), is a corporation organized under the laws of the State of California, which owns and operates Mark West Quarry, Blue Rock Quarry, and Santa Rosa Hot Plant (collectively referred to hereafter as the "Facilities") for the purpose of hard rock mining and quarrying operations, and associated material processing, subject to compliance with the Statewide General Permit for Stormwater Discharges Associated with Industrial Activities, NPDES Permit No. CAS000001 ("General Permit") under the federal Clean Water Act ("CWA").

WHEREAS, on or about August 8, 2020, RIVER WATCH provided BO DEAN, the U.S. Environmental Protection Agency ("EPA"), EPA Region IX, and the North Bay Regional Water Quality Control Board ("Regional Board") with a Notice of Violations and Intent to File Suit under the CWA, 33 U.S.C. § 1365, regarding BO DEAN's operation of Mark West Quarry;

WHEREAS, on or about November 16, 2020, RIVER WATCH provided BO DEAN, the U.S. EPA, EPA Region IX, and the Regional Board with a Notice of Violations and Intent to File Suit under the CWA, 33 U.S.C. § 1365, regarding BO DEAN's operation of Blue Rock Quarry;

WHEREAS, on or about March 1, 2021, RIVER WATCH provided BO DEAN, the U.S. EPA, EPA, Region IX, and the Regional Board with a Notice of Violations and Intent to File suit under the CWA, 33 U.S.C. § 1365, regarding BO DEAN's operation of Santa Rosa Hot Plant. (The three (3) Notices of Violations are referred to collectively hereafter as the "CWA Notice Letters");

WHEREAS, on May 7, 2021, RIVER WATCH filed its Complaint against BO DEAN in the U.S. District Court, Northern District of California, assigned Case No. 3:21-cv-03412-SI, alleging violations of substantive and procedural requirements of the CWA ("CWA Complaint");

WHEREAS, on July 14, 2021, BO DEAN filed an Answer in response to the CWA Complaint which denied RIVER WATCH's substantive and material allegations and claims as set forth in the CWA Notice Letters and CWA Complaint and set forth affirmative defenses;

WHEREAS, RIVER WATCH and BO DEAN have agreed that it is in the Parties' mutual interest to enter into a Consent Decree setting forth the terms and conditions appropriate for resolving RIVER WATCH's allegations set forth in the CWA Notice Letters and CWA Complaint without further proceedings, have consented to the entry of this [Proposed] Consent Decree and Order without trial of any issues, and hereby stipulate that in order to settle the claims alleged by RIVER WATCH against BO DEAN in the CWA Notice Letters and CWA Complaint this [Proposed] Consent Decree should be entered; and,

WHEREAS, all actions taken by BO DEAN pursuant to this [Proposed] Consent Decree shall be made in compliance with all applicable federal and state laws and local rules and regulations;

NOW THEREFORE, it is hereby stipulated and agreed by the Parties, and ordered and decreed by this Court as follows:

### CONSENT DECREE

1.  The above RECITALS are incorporated into and shall become a part of this [Proposed] Consent Decree.

### I.  JURISDICTION

2.  For purposes of entry of this [Proposed] Consent Decree, the Parties agree this Court has jurisdiction over the subject matter and the Parties in this action pursuant to CWA § 505(a), 33 U.S.C. § 1365(a).

3.  Venue is proper in the Northern District of California pursuant to CWA § 505(c)(1), 33 U.S.C. § 1365(c)(1), because this is the judicial district in which BO DEAN and the Facilities are

located. The CWA Complaint states claims upon which relief may be granted pursuant to CWA §505(a)(1), 33 U.S. C. § 1365(a)(1).

4.    RIVER WATCH has standing to bring this action.

5.    The Court shall retain jurisdiction over this matter for purposes of enforcing the terms of this Consent Decree for the life of this Consent Decree, or as long thereafter as is necessary for the Court to resolve any motion to enforce this Consent Decree.

## II.   APPLICABILITY AND BINDING EFFECT

6.    This Consent Decree shall apply to and be binding upon RIVER WATCH and its members, agents, representatives, successors, members, contractors, sub-contractors, consultants and assigns, and BO DEAN and its employees, contractors, sub-contractors, consultants, agents, assigns and each and every one of them acting under its direction and/or control. To the extent that federal law (including federal principles of *res judicata*) allows, this Consent Decree shall be considered binding upon all persons and entities who may hereafter file a legal action against BO DEAN regarding claims that are the subject of this Consent Decree.

## III.   CONSENT DECREE TERM

7.    The "Effective Date" of this Consent Decree shall be the date upon which the Consent Decree has been entered by the Court and becomes a final enforceable order. This Consent Decree shall expire on its own terms, and be of no further force and effect five (5) years from the Effective Date (hereafter, "Termination Date").

## IV.   AGREED REMEDIAL MEAURES BY BO DEAN

8.    In exchange for the delivery, execution, and performance of this [Proposed] Consent Decree and of the release by RIVER WATCH as provided herein, BO DEAN shall perform the below-specified remedial measures. BO DEAN reserves the right, in its sole discretion, to determine (i) which persons shall perform any work described herein, including contractors, and (ii) the scope and technical details of, and the manner to implement, such work subject to review

and approval by the Regional Board, or such other regulatory agency as may from time to time, exercise jurisdiction with respect to environmental matters under the NPDES Permit.

8.1. <u>Mark West Quarry Remedial Measures.</u> In addition to the sampling and monitoring requirements of the General Permit detailed in the Revised Storm Water Pollution Prevention Plan ("SWPPP") for Mark West Quarry dated August 17, 2020, BO DEAN shall:

8.1.a. Perform visual inspection during any Qualifying Storm Event ("QSE"), as defined in the General Permit, to ensure that storm water from the process areas is not leaving the site. If RIVER WATCH documents off site discharges, BO DEAN shall sample those discharges for process pollutants to determine if they need to employ Best Management Practices ("BMPs") to mitigate those discharges.

8.1.b. Within six (6) months after the Effective Date of this Consent Decree, install and implement BMPs, in substantial compliance with the specifications attached on Exhibit A hereto, to redirect and capture runoff in the lower part of the driveway to the entrance to Mark West Quarry.

8.1.c. Within six (6) months after the Effective Date of this Consent Decree, implement annual winter stabilization in the spoil and filter cake handling areas with hydro-mulch seed.

8.1.d. Within six (6) months after the Effective Date of this Consent Decree, remove all unused equipment and scrap metal from the site's boneyard, remedy any soil contamination, and revegetate cleared areas with natural vegetation.

8.1.e. Within six (6) months after the Effective Date of this Consent Decree, improve erosion control in portions of the previously reclaimed areas where erosion control has failed, or where excessive erosion exists on access roads.

8.1.f. Provide to RIVER WATCH a copy of the Treatment System Plan required by Regional Board Order R1-2020-0026 concurrently with submitting the Treatment System Plan to

the Regional Water Board. BO DEAN will also provide to RIVER WATCH the engineering analysis of the erosion-control BMPs on the hillside below the SP-3 discharge point.

    8.2. <u>Blue Rock Quarry Remedial Measures</u>. In addition to the sampling and monitoring requirements of the General Permit detailed in section 9 of the SWPPP for Blue Rock Quarry dated October 11, 2018, BO DEAN shall:

    8.2.a. Collect the first storm water sample of Annual Reporting year 2022-2023 and Annual Reporting year 2023-2024 from the first QSE ("first flush") and subject to the timing/safety protocols set forth in Sections XI.B.5 and XI.C.6.a.ii of the General Permit.

    8.2.b. Collect two (2) pond water samples during the 2021-2022 season for all parameters identified in the Blue Rock Quarry SWPPP plus aluminum, iron, copper or zinc. If pond sampling shows concentrations of aluminum, iron, copper or zinc exceeding the Numeric Action Levels ("NALs") in the General Permit, BO DEAN will add those parameters to the surface water monitoring program in 2022-2023.

    8.2.c. Starting with Annual Reporting year 2021-2022, BO DEAN shall sample storm water at Discharge Point 1B at the point where the runoff discharges to the roadside ditch rather than at the protected drain inlet.

    8.2.d. Within six (6) months after the Effective Date of this Consent Decree, install and implement BMPs to redirect and capture runoff to the entrance to Blue Rock Quarry (subject to a description of the BMPs).

    8.2.e. Starting on the Effective Date of this Consent Decree, BO DEAN shall provide access to RIVER WATCH to Blue Rock Quarry, twice yearly, to take water samples from the roadside ditch proximate to Discharge Point 2B. RIVER WATCH shall provide notice to BO DEAN prior to any sampling event and shall cooperate with supervision by BO DEAN.

    8.3. <u>Santa Rosa Hot Plant Remedial Measures.</u> In addition to the sampling and monitoring requirements of the General Permit detailed in section 9 of the SWPPP for Santa Rosa Hot Plant dated December 1, 2017, BO DEAN shall:

    8.3.a. Collect the first storm water sample of Annual Reporting year 2022-2023 and Annual Reporting year 2023-2024 from the first QSE as defined in the General Permit ("first

flush") and subject to the timing/safety protocols set forth in Sections XI.B.5 and XI.C.6.a.ii of the General Permit.

8.3.b.  For Annual Reporting Year 2021-2022, BO DEAN shall sample two (2) storm water discharges from Santa Rosa Hot Plant for copper, zinc and 6PPD-quinone, to determine if stormwater runoff contains these pollutants as a result of vehicle traffic on the site. If the analytical results for copper or zinc exceed the NALs in the General Permit, or the analytical results for 6PPD-quinone exceed any water quality objective, BO DEAN shall add those parameters to the surface water monitoring program in 2022-2023.

8.3.c. For Annual Reporting Year 2021-2022, BO DEAN shall sample two (2) storm water discharges from Santa Rosa Hot Plant for TPH (total petroleum hydrocarbon) and BTEX (benzene, toluene, ethylbenzene, and xylene), to determine if any of these pollutants, which are specific to asphalt production and handling, are present in storm water runoff.  If the analytical result for any of the afore-mentioned pollutants exceed any water quality objective, BO DEAN shall develop appropriate BMPs to reduce concentrations of the pollutant below all water quality objectives.

8.3.d.  Within three (3) months after the Effective Date of this Consent Decree, BO DEAN shall allow RIVER WATCH access to Santa Rosa Hot Plant for a supervised site visit to confirm the site is effectively graded and controlled to drain to the single discharge point, SP-1.

8.3.e.  Within six (6) months after the Effective Date of this Consent Decree, BO DEAN shall revise its SWPPP for Santa Rosa Hot Plant to include the remedial measures set forth in this Section 8.3. and any additional remedial measures implemented or planned based on information disclosed by implementing the remedial measures identified in this section 8.3.

8.4     Supplemental Environmental Project.  Within six (6) months after the Effective Date of this Consent Decree, BO DEAN shall fund a $57,500.00 Supplemental Environmental Project ("SEP") that complies with the U.S. EPA Supplemental Environmental Projects Policy 2015 Update.[1]  The SEP (or SEPS) shall be jointly agreed upon by the Parties to this Agreement,

---

[1] *See*, https://www.epa.gov/enforcement/2015-upate-1998-us-epa-supplemental-environmental-projects-policy.

and the monies provided to and the project managed by independent entities with no affiliation to either Party.

## V. RELEASE OF LIABILITY AND COVENANT NOT TO SUE

9. It is the intent of the Parties that this Consent Decree constitutes a full and complete satisfaction of all rights, claims and demands by RIVER WATCH against BO DEAN with respect to any and all allegations or claims made in the CWA Complaint, CWA Notice Letters or any CWA violation up to the date of the CWA Notice Letters, with regard to the operation of the Facilities. RIVER WATCH on behalf of itself and any and all of its agents, representatives, successors, members, and assigns, except as otherwise provided for herein, does hereby absolutely, fully and forever release, relieve, remise and discharge BO DEAN and its past and present employees, officers, directors, attorneys, and the predecessors, successors, and assigns of any of them, from all causes of actions, claims, damages, penalties, demands, actions, attorneys' fees, costs of suit, injunctive relief and liabilities of every kind or nature whatsoever, arising out of the specific claims asserted in the CWA Notice Letters or CWA Complaint concerning BO DEAN's operation and ownership of the Facilities. The release provided for herein shall be valid and effective whether the claims, causes of action, or liability hereby released (i) were known or unknown, suspected or unsuspected, (ii) were based in contract, tort, statute, or otherwise, or (iii) arise at law or in equity. The release shall survive the termination of this Consent Decree whether by satisfaction of the terms and conditions hereof or operation of law.

The Parties acknowledge they are familiar with Section 1542 of the California Civil Code, and each Party expressly waives and relinquishes any rights and benefits which it has or may have under Section 1542 of the California Civil Code which provides:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing this release and that, if known by him or her would have materially affected his or her settlement with the debtor or released party.

The Parties acknowledge that each has specifically reviewed with its attorney the meaning and effect of the release set forth herein, the language of Civil Code Section 1542, and the waiver contained

herein; that their attorneys have fully explained the impact of these provisions, and the Parties knowingly accept the risks associated with this provision.

For a period five (5) years after the date Effective Date of this Consent Decree, RIVER WATCH agrees that neither RIVER WATCH, its officers, executive staff, members of its governing board, nor any organization under the control of RIVER WATCH, its officers, executive staff and members of its governing board, will serve any Notices of Violation and Intent to Sue or file any lawsuit against BO DEAN seeking relief for the alleged violations of the CWA (33 U.S.C. § 1251, et seq.) with regard to the Facilities, nor will RIVER WATCH initiate or support such lawsuits against BO DEAN, brought by other groups or individuals, by providing financial assistance, personnel time or any other affirmative actions.

## VI.  RIVER WATCH ATTORNEYS' FEES AND COSTS

10.     Within ten (10) calendar days after the Effective Date of this Consent Decree, BO DEAN shall pay to RIVER WATCH the sum of Fifty-Seven Thousand and Five Hundred Dollars ($57,500.00).  Payment shall be made by BO DEAN to RIVER WATCH in the form of a single check payable to "California River Watch and mailed to the Law Office of Jack Silver, 708 Gravenstein Hwy. North, #407, Sebastopol, CA 95472-2808.  Said payment shall constitute full satisfaction and payment for all costs of litigation and attorneys' fees incurred by RIVER WATCH that have or could have been claimed in connection with this matter up to and including the Effective Date of this Consent Decree, and for RIVER WATCH's expert and attorneys' fees and costs for monitoring and enforcing BO DEAN's compliance with the ongoing obligations under this Consent Decree up to and including the Termination Date.

## VII.  NOTICE TO THE FEDERAL GOVERNMENT

11.     The Parties acknowledge and agree that entry of this Consent Decree is subject to the requirements of CWA § 505(c)(3), 33 U.S.C. § 1365(c)(3), which provides that "[n]o consent judgment shall be entered in an action in which the United States is not a party prior to 45 days following receipt of a copy of the proposed consent judgment by the Attorney General and the [EPA] Administrator." Within seven (7) business days following the Parties' execution of this document, RIVER WATCH shall serve copies upon the EPA Administrator and the United States Department of

Justice for agency review consistent with 40 C.F.R. § 135(a). The agency review period expires forty-five (45) days after receipt by the agencies, as evidenced by written acknowledgment of receipt by the agencies or the certified return receipts, copies of which shall be provided to BO DEAN if requested. In the event the Federal Agencies object to entry of this Consent Decree, the Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies within a reasonable amount of time.

### VIII.   GENERAL PROVISIONS

12.   <u>No Admission</u>.   This [Proposed] Consent Decree is the direct result of a compromise of disputed allegations and claims.  As such, this [Proposed] Consent Decree shall not, for any purpose, be considered as an admission of liability by BO DEAN, nor shall the payment of any sum of money in consideration for the execution of this Consent Decree constitute or be construed as an admission of any liability by BO DEAN which expressly denies any such liability or wrongdoing.

13.   <u>Delays in Scheduling Implementation</u>.   In the event implementation by BO DEAN of the remedial measures set forth in Section IV.8 of this Consent Decree does not occur by the agreed upon dates, despite the timely good faith efforts of BO DEAN to acquire any necessary approvals and/or permits, or due to factors unforeseen at the time this Consent Decree was entered into, BO DEAN agrees to notify RIVER WATCH in writing as soon as practicable after the anticipated delay becomes apparent, and in any case except in a case of force majeure as described below, not less than twenty (20) days prior to any deadline set forth in Section IV.8., and shall describe the reasons for the anticipated delay.

14.   <u>Force Majeure</u>.   BO DEAN shall not be deemed in default or breach of this Consent Decree by reason of any event which constitutes a force majeure. For purposes of this Consent Decree, a force majeure is defined as any event arising from causes beyond the reasonable control of BO DEAN or its contractors that delay or prevents performance. This includes, without limitation, acts of God, acts of war, acts of terrorism, fire, explosion, extraordinary weather events, restraint by court order or public authority, or other causes beyond BO DEAN's reasonable control. Neither increased costs nor economic hardship shall constitute a force majeure.

15. <u>Breach of Consent Decree and Dispute Resolution</u>. Any disputes between RIVER WATCH and BO DEAN concerning any alleged breach of this Consent Decree shall be subject to the following dispute resolution procedures. Failure to satisfy the payment condition in Section VI of this Consent Decree is a substantial breach of this Consent Decree and relieves RIVER WATCH of its obligations under this Consent Decree.

15.a <u>Good Faith Negotiations</u>. RIVER WATCH and BO DEAN shall make good faith efforts to resolve informally any alleged breach of this Consent Decree. If informal efforts to resolve the alleged breach are unsuccessful, the Party claiming a breach shall provide written notice of the alleged breach and that Party's intent to initiate the dispute resolution procedure of this Section VIII.15. The notice shall include a recitation of all facts and circumstances giving rise to the dispute, including the particular sections of this Consent Decree alleged to have been breached.

15.b. <u>Mediation.</u> If the dispute is not resolved by the Parties within thirty (30) days after such notice is given, such dispute shall be submitted to mediation before a mutually agreed neutral mediator. The Parties shall each bear their own costs and attorneys' fees in connection with such mediation.

16. <u>Waiver</u>. By agreeing to the dispute resolution provisions set out in Section VIII.15 of this Consent Decree, the Parties understand they are waiving certain important rights and protections that otherwise may have been available to each of them if a dispute between them were determined by judicial action including, without limitation, the right to a jury trial, and certain rights of appeal. Other than the remedies contained within this Consent Decree including dispute resolution and specific performance of the terms of this Consent Decree, there are no other remedies. The Parties specifically agree there is no basis within this Consent Decree or within the contemplation of the Parties to support a claim for consequential damages due to any form of breach.

17. <u>Notices</u>. All notices, consents, approvals, request, demands and other communications (collectively, "Notice") which the Parties are required or desire to serve upon or

deliver to the other Party shall be in writing and shall be given by electronic mail, when possible, and if not, by certified United States mail, return receipt requested, addressed as set forth below:

    If to RIVER WATCH:    Jack Silver, Esq.
                                    Law Office of Jack Silver
                                    708 Gravenstein Hwy. No. # 407
                                    Sebastopol, CA 95472-2808
                                    Email:  lhm28843@sbcglobal.net

    If to BO DEAN:        Sean K. Hungerford, Esq.
                                    HARRISON TEMBLADOR
                                    HUNGERFORD & JOHNSON
                                    2801 T Street
                                    Sacramento, CA 95816
                                    shungerford@hthjlaw.com.

The foregoing addresses may be changed by Notice given in accordance with this Section. Any Notice sent by certified mail shall be deemed received upon the date signed for.  Any Notice sent by electronic mail shall be deemed received upon electronic transmission thereof provided sender does not receive electronic notice of non-delivery. If the date of receipt of any Notice to be given hereunder falls on a weekend or legal holiday, then such date of receipt shall automatically be deemed extended to the next business day immediately following such weekend or holiday for purposes of calculating time periods commencing upon the date of service.

      18.    <u>Attorneys' Fees</u>.  Other than the payment to RIVER WATCH under Section VI of this Consent Decree, each Party shall bear its own past and future attorneys' fees and costs relating to the subject matter of this Consent Decree.

      19.    <u>Parties' Acknowledgement of Terms</u>.  This Consent Decree has been carefully and fully read and reviewed by RIVER WATCH, BO DEAN and their respective counsel who hereby represent that the contents of this Consent Decree are understood, and agree that this Consent Decree is binding on each Party or its respective predecessors, successors, and assigns and as described above.

      20.    <u>Interpretation and Applicable Law</u>.  This Consent Decree shall be construed and interpreted in accordance with the laws of the United States and the State of California without regard to principles of conflicts of law.  This Consent Decree shall be interpreted and construed

as a whole, according to its fair meaning and not strictly for or against any Party, and without regard to which Party drafted the Consent Decree. All of the promises, representations, and warranties contained in this Consent Decree survive the execution of this Consent Decree.

21. <u>No Assignments</u>. Each Party to this Consent Decree represents and warrants that it has not assigned, transferred, hypothecated, or sold to any third person or entity, any of the rights or obligations released by or entered into this Consent Decree.

22. <u>Counterparts</u>. This Consent Decree may be executed in multiple counterparts, each of which shall evidence one and the same Consent Decree. The Parties' signatures to this Consent Decree transmitted by electronic mail transmission shall be deemed original and binding.

23. <u>Headings</u>. The headings used in this Consent Decree are for the convenience of reference and shall not be used to define any provision.

24. <u>Entire Agreement in Writing</u>. This Consent Decree constitutes the entire agreement between the Parties hereto with respect to the subject matter set forth herein and supersedes all previous or contemporaneous negotiations, commitments (oral and written), and writings with respect to the subject matter set forth herein.

25. <u>Modification or Amendment</u>. This Consent Decree or any of its provisions may be modified or amended only by written agreement executed by all Parties to this Consent Decree.

26. <u>Severability</u>. The invalidity or unenforceability of any provision of this Consent Decree shall in no way affect the validity or enforceability of any other provision. If, in any action before any court or other tribunal or competent jurisdiction, any term, restriction, covenant, or promise is held to be unenforceable for any reason, then such term, restriction, covenant, or promise shall be deemed modified to the extent necessary to make it enforceable by such court or other tribunal and, if it cannot be so modified, than this Consent Decree shall be deemed amended to delete herefrom such provision or portion adjudicated to be invalid or unenforceable, and the remainder of this Consent Decree shall be deemed to be in full force and effect as so modified. Any such modification or amendment in any event shall apply only with respect to the operation of this Consent Decree in the particular jurisdiction in which such adjudication is made.

27. <u>Representations and Warranties</u>.  This Consent Decree is given voluntarily, free of undue influence, coercion, duress, menace, or fraud of any kind.  No Party, nor any officer, agent, employee, representative, or attorney of or for any Party, has made any statement or representation to any other Party regarding any fact relied upon in entering into this Consent Decree, and no Party is relying upon any statement, representation, or promise of any other Party, nor of any officer, agent, employee, representative, or attorney of or for any Party, in executing this Consent Decree or in making the settlement provided herein, except as expressly stated in this Consent Decree.

28. <u>No Third-Party Beneficiaries</u>.  This Consent Decree is not intended to confer any rights or obligations on any third party or parties, and no third party or parties shall have any right of action under this Consent Decree for any cause whatsoever.  All of the rights, duties, and obligations contained in this Consent Decree shall insure to the benefit of and be binding upon the Parties and their successors and assigns.

29. <u>Authority</u>.  Each of the persons executing this Consent Decree on behalf of an entity represents and warrants that he or she has actual authority and capacity to execute this Consent Decree on behalf of the entity and to bind it to all of the terms of this Consent Decree.

### IX.   RETENTION OF JURISDICTION

30. This Court shall retain jurisdiction to enforce the terms and conditions of this Consent Decree and to resolve any disputes arising hereunder for a period of five (5) years after its entry.  After this five (5) year period, BO DEAN's obligation to comply with the injunctive relief provided for herein shall terminate.

### X.   COURT APPROVAL

31. The Parties hereby respectfully request that this Court promptly approve and enter this Consent Decree. Upon entry of this Consent Decree, RIVER WATCH and BO DEAN waive their respective rights to a hearing or trial on the allegations of the CWA Complaint and CWA Notice Letters which are at issue in this action. If this Consent Decree is not approved by the Court, it shall be of no force and effect, and it may not be used in any proceeding for any purpose.

IT IS SO AGREED AND STIPULATED:

DATED:                           BO DEAN CO., INC.

                                 By:
                                 Dean N. Soiland, President

DATED:                           CALIFORNIA RIVER WATCH

8/31/2021                        By:
                                 Larry Hanson, Board President

APPROVED AS TO FORM:

LAW OFFICE OF JACK SILVER

By:
Jack Silver
Attorney for California River Watch

DATED: Aug. 31, 2021

LAW OFFICE OF JERRY BERNHAUT

By:
Jerry Bernhaut
Attorney for California River Watch

DATED:

HARRISON TEMBLADOR HUNGERFORD & JOHNSON

By:
Sean Hungerford
Attorney for BO DEAN CO., INC.

DATED:

IT IS SO ORDERED:

DATED:
                                 SUSAN I. ILLSTON
                                 U.S. DISTRICT JUDGE

IT IS SO AGREED AND STIPULATED:

DATED:                        BO DEAN CO., INC.

By: _____
Dean N. Soiland, President

DATED: 8/31/2021        CALIFORNIA RIVER WATCH

By: _____
Larry Hanson, Board President

APPROVED AS TO FORM:

LAW OFFICE OF JACK SILVER

By: _____
Jack Silver
Attorney for California River Watch

DATED: Aug. 31, 2021

LAW OFFICE OF JERRY BERNHAUT

By: _____
Jerry Bernhaut
Attorney for California River Watch

DATED: Aug. 31, 2021

HARRISON TEMBLADOR HUNGERFORD & JOHNSON

By: _____
Sean Hungerford
Attorney for BO DEAN CO., INC.

DATED:

IT IS SO ORDERED:

DATED:

SUSAN I. ILLSTON
U.S. DISTRICT JUDGE

[Proposed] Consent Decree and Order      14      3:21-cv-03412-SI

IT IS SO AGREED AND STIPULATED:

DATED: 9/8/2021

BO DEAN CO., INC

By: _____
Dean N. Soiland, President

DATED: 8/31/2021

CALIFORNIA RIVER WATCH

By: _____
Larry Hanson, Board President

APPROVED AS TO FORM:

LAW OFFICE OF JACK SILVER

By: _____
Jack Silver
Attorney for California River Watch

DATED: Aug. 31, 2021

LAW OFFICE OF JERRY BERNHAUT

By: _____
Jerry Bernhaut
Attorney for California River Watch

DATED: Aug. 31, 2021

HARRISON TEMBLADOR HUNGERFORD & JOHNSON

By: _____ Sept. 8, 2021
Sean Hungerford
Attorney for BO DEAN CO., INC.

DATED:

IT IS SO ORDERED:

DATED:

SUSAN I. ILLSTON
U.S. DISTRICT JUDGE

[Proposed] Consent Decree and Order    14    3:21-cv-03412-
SI

# EXHIBIT A

# EXHIBIT A

